# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:15-CR-177** |
| | ) | |
| **MICHAEL BENANTI,** | ) | |
| Defendant. | ) | |

---

### MOTION AND MEMORANDUM TO SUPPRESS EVIDENCE OBTAINED AT 380 ALLISON DRIVE ("SOUTHERN COMFORT")

---

COMES the defendant, MICHAEL BENANTI ("Mr. Benanti"), by and through his undersigned counsel, and respectfully requests this Honorable Court issue an Order suppressing all evidence as a result of a search warrant executed on 380 Allison Drive, Maggie Valley, North Carolina[1] as a violation of Mr. Benanti's rights under the Fourth Amendment to the United States Constitution. Specifically, Mr. Benanti argues that the affidavit supporting the search warrant issued by a Federal Magistrate Judge in the Western District of North Carolina lacks a sufficient "nexus between the place to be searched and the evidence sought." *United States v. Washington*, 380 F.3rd 236 (6th Cir. 2004); *United States v. Savoca*, 761 F.2d. 292, 298 (6th Cir.1985). It is Mr. Benanti's position that this search warrant and affidavit lacks any constitutional nexus between the crimes alleged, the individuals involved, and the places and the things to be searched and seized. In support of this Motion Mr. Benanti would state the following:

---

[1] Search warrant and affidavit for the residence located at 380 Allison Drive, Maggie Valley, North Carolina, executed on November 26, 2015. This search warrant and search warrant affidavit are attached to this Motion and marked as Exhibit 1.

1

## I. INTRODUCTION

A casual reading of the affidavit in question herein immediately alerts the reader to the infirmity in this search warrant application. Breaking it down to the simplest parts, the affidavit describes four separate incidents;

- An attempted bank robbery of the Y-12 Federal Credit Union, Oak Ridge, Tennessee on April 28, 2015 (hereinafter "Y-12")

- A bank robbery of the SmartBank, 202 Advantage Place, Knoxville, Tennessee on July 7, 2015 (hereinafter "SmartBank")

- A car chase in North Carolina on September 3, 2015

- The surveillance, and the illegal arrest of Mr. Benanti on November 25, 2015

By simply detailing each of these incidents in chronological, numbered paragraphs, the affidavit creates an illusion that the incidents are somehow connected. Each of these incidents will be discussed in more detail, but the central issues raised herein are the break in the nexus that ties the alleged bank robberies to the place to be searched, the items to be seized, and the individuals who were arrested. Read together, these paragraphs, skillfully worded by the United States' use of transitions, lack any constitutionally required connection between Y-12 and SmartBank and the rental house at 380 Allison Drive. This lack of connection is compounded with a material misrepresentation in the affidavit and the illegal arrest of Mr. Benanti.

2

## II. THE DISJOINTED FACTS

The affidavit in question, sworn by Federal Bureau Investigation Special Agent Rory Poynter, is remarkable because it goes into great detail concerning crimes, events, people, and places. Although it tracks the FBI investigation in this matter, it attempts to cobble together mostly unrelated events, over a period of seven (7) months. These events lack any real connection with each other, and naturally, the location of the place to be searched and the targets of the investigation.

### A. April 28, 2015 the attempted bank robbery of the Y-12 Federal Credit Union, Oak Ridge, Tennessee

The affidavit begins with the description of an April 28, 2015 kidnapping and failed bank robbery of the Y-12 Federal Credit Union (hereinafter "Y-12"). The affidavit describes two masked white males and a masked white female accosting a Y-12 executive, his wife, and his adult son at 1916 Dobson Lane, Knoxville, Tennessee. While the bank executive was told to go to the credit union and obtain a large amount of currency, his wife and the adult son were bound and blindfolded by the assailants and were driven around in a vehicle that was owned by the victims. (Ex. 1 at page 2, ¶5, 6, 7). The bank executive notified police of the scheme, and the suspects aborted their kidnapping and bank robbery and escaped, leaving the victims physically unharmed. (Ex.1 at page 3, ¶ 9, 10, 11, 12). On the surface, this information in the affidavit is unremarkable.

A closer look, however reflects that this incident is not connected or related to any other incident described in the affidavit. Discovery reflects that the wife of the executive, who was with the assailants through the entire ordeal, stated clearly to law enforcement that while the suspects wore bandanas over their faces, "the one

3

in charge was black." She also clearly stated that only one of the men was white. (See voluntary statement of Allison Ziegler, attached as exhibit 2 to this motion).

The importance of this interview by Allison Ziegler is twofold within this affidavit. First, it is clear that Special Agent Poynter misrepresented the facts when he described, under oath, that the victims of the April 28, 2015 Y-12 robbery "were accosted by two masked white males." (Ex. 1 page 2, ¶5). Second, the fact that one of the male suspects was black is entirely inconsistent with not only the next listed crime, (the robbery of Smart Bank in Knoxville, Tennessee on July 7, 2015) but skews the rationale for the eventual surveillance and seizure of the two males and defendants in this case, neither of whom are black.

### B.  July 7, 2015 bank robbery of the SmartBank, 202 Advantage Place, Knoxville, Tennessee

The next incident described in the affidavit is a robbery of the SmartBank at 202 Advantage Place, Knoxville, Tennessee on July 7, 2015. This robbery is described in the affidavit "as a similar crime" (Ex. 1 at 13 page 3, ¶13). This crime involved two masked *white males* who broke into the home of a bank executive at 8415 Swathmore Court, detained them, and required the male, who is an executive at the SmartBank on 202 Advantage Place, Knoxville, Tennessee, to go into the bank with an open cell phone and take money out of the vault and bring it back to the suspects. While the affidavit references a third person, the only description of that third person listed in the affidavit is a "female", but no female was seen during the criminal actions that took place on July 7, 2015. The suspects were successful in obtaining a large amount of cash and ultimately the family was released.

While the robbery of the Smart Bank and the attempted robbery of Y-12 had some similar characteristics, the description of the suspects, the details of modus operandi, the types of firearms, the number of suspects (three in the Y-12, two in the SmartBank robbery), the types of masks, bandanas in the Y-12, and masks depicting old men's faces in the SmartBank robbery, and the difference in races of the suspects, all reflect serious differences between these two crimes.

### C. September 3, 2015 car chase in North Carolina

The affidavit next describes a _completely_ unrelated vehicle chase on September 3, 2015 in North Carolina. The affidavit states that a North Carolina Highway Patrol Trooper determined that a vehicle occupied by two white males was stolen from New Hampshire. The trooper pursued them and after an extensive car chase, the two white males, each carrying duffle bags, fled from the vehicle and escaped on foot. (Ex. 1 at page 6, ¶23). Neither the car chase, the vehicle, the State of New Hampshire, nor any other details, link the car chase with the two prior crimes (SmartBank and Y-12). The FBI, on a hunch, followed up on this traffic chase and stop. (See Ex. 1, page 6, ¶24).

Although it is not clear from the affidavit, after the vehicle chase that occurred on September 3, 2015, the vehicle was seized by the North Carolina State Highway Patrol and an electronic GPS device was recovered. Sometime thereafter, the FBI Johnson City field office made contact with the North Carolina State Highway Patrol and obtained and examined this GPS device. As the affidavit states, the FBI "suspecting that these subjects may somehow be related

to the aforementioned robberies", examined the GPS, and an address (124 Rebel Ridge Road, Canton, North Carolina) was recovered from the GPS device.

Through some technical work, and an interview of the owner of the Rebel Ridge address, and a property management company, the FBI was led to a second rental property in Haywood County, North Carolina which, though not specifically described in (Ex. 1 at ¶24), is referred to as "Southern Comfort" and is located at 380 Allison Drive, Maggie Valley, North Carolina.

Nothing regarding the vehicle chase, the GPS device, the rental properties, or even the description of the suspects relates back to the two prior crimes (SmartBank and Y-12).

### D. November 25, 2015 Surveillance, and the illegal arrest of Mr. Benanti at 380 Allison Drive (hereinafter "Southern Comfort")

The affidavit then describes that the FBI, through contact with the Haywood County Sheriff's Department, had the Southern Comfort residence surveilled for a few days. On November 25, 2015, the FBI was notified by the Haywood County Sheriff's Department that a gray Nissan Pathfinder "had stolen license tags out of Maryland," and was spotted leaving the Southern Comfort location. Based on the information from the Haywood County Sheriff's Department, the FBI authorized a vehicle stop of the Nissan Pathfinder although they had no idea who was in the vehicle, (no positive ID of anyone in the vehicle was made), nor any idea that these were the same individuals who had rented the house at 380 Allison Drive. Nothing in the affidavit reflects <u>any</u> evidence that would lead law enforcement to believe

6

that these two white males in the Nissan Pathfinder were connected to any bank robbery.

At the direction of the FBI, NCSHP Trooper Reynolds stopped the Nissan Pathfinder. After, Trooper Reynolds activated his blue lights, the Nissan Pathfinder pulled to the shoulder and Mr. Benanti exited the vehicle. Mr. Benanti was immediately taken into custody. The driver of the vehicle fled the scene and continued to evade law enforcement. Although Mr. Benanti was only a passenger of a vehicle with stolen tags, Mr. Benanti was taken into custody, handcuffed, and placed under arrest[2]. (See Ex. 1 at page 7-8, ¶27, 28, 29).

Moreover, although the affidavit describes a variety of items taken from Mr. Benanti at the scene and a bag of Mr. Benanti's, nothing that was discovered at the scene connected Mr. Benanti to any crimes at the Y-12 credit union in Oak Ridge, Tennessee or the SmartBank in Knoxville, Tennessee earlier in the year. These items included a note that was taken from him in the back of the patrol car that had addresses of bank locations, names of individuals, and South Carolina tag numbers.

Although the affidavit summarized all of the events, the affidavit does not ever connect the events. The only suspicion of a crime concerning Mr. Benanti is described in the affidavit as being the passenger of a vehicle with stolen license plates. However, this affidavit describes completely unrelated robberies and kidnappings and tenuously attributes them to Mr. Benanti and to the Southern Comfort residence.

---

[2] This is the subject of another Motion before this Court.

### III. RELEVANT LAW

A brief recitation of the relevant law is necessary. Further briefing may be required depending on what record develops at the evidentiary hearing on June 2, 2016, before this Court.

#### A. Search Warrant

A court's review of the sufficiency of the evidence supporting probable cause is limited to the four-corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). *See also United States v. Melton*, No. 3:10-CR-126, 2012 WL 1866599, at *22 (E.D. Tenn. Feb. 7, 2012)[3]. Generalized boilerplate recitations can produce insufficient particularized facts about the case or suspect when determining probable cause. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Moreover, "[t]he belief that the items sought will be found at the location to be searched must be supported by less than prima facie proof but more than mere suspicion." *United States v. Bethal*, 245 F. App'x 460, 464 (6th Cir. 2007) (internal citations omitted).

An affiant's belief that probable cause *may* exist to search for and seize contraband contained in a location is an unsupported conclusion not justifying the issuance of a search warrant. *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973). In *United States v. Bethal*, for example, the court affirmed a lower court's order granting a motion to suppress on the grounds, among many, that the

---

[3] Of course, as shown later, to make a showing of a violation under *Franks v. Delaware*, 438 US 154 (1978) a "substantial preliminary showing" is required to show that critical information was misrepresented or omitted from an affidavit. See also *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998).

8

affidavit only contained information connecting the defendant to two shootings, but did not contain any facts connecting him to drugs or weapons at his residence.

### B. The Law Requires a Nexus Between the Crimes and the People, Places and Things to be Seized.

The Fourth Amendment requires that an affidavit in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins,* 278 Fed.Appx. 629, 634 (6th Cir.). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Washington,* 380 F.3d 236 (6th Cir.2004) (citing *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983)).

Particular circumstances can undermine the otherwise "generally permissible inference that bank robbers tend to conceal evidence of their crimes in 'places both accessible and private.'" *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985). A sufficient nexus "turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *Id.* 298. "The Court [in *Savoca*] held that the affidavit only established that 'two persons known to have been involved in several bank robberies were observed on the same premises' and such information established no more than 'bare suspicion.'" *United States v. Carney*, 661 F. Supp. 2d 732, 740

9

(W.D. Ky. 2009) (citation omitted), *on reconsideration*, 683 F. Supp. 2d 513 (W.D. Ky. 2010), *aff'd*, 675 F.3d 1007 (6th Cir. 2012).

The affidavit must show reasonable cause that the contraband sought will be found in the property to be searched, not merely that the owner of the property is suspected of a crime. *United States v. Sneed*, 385 F. App'x 551 (6th Cir. 2010). A suspect's presence or arrest at a residence "is too insignificant a connection . . . to establish the nexus necessary for a finding of probable cause." *United States v. Carney*, 611 F. Supp. 2d 731, 739 (W.D. Ky. 2009).

An officer's training and experience alone are "not sufficient to establish a nexus to any location connected to the defendant." *Id. See also United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (finding that officer's training and experience alone did not establish a nexus to the defendant's safe deposit box). Additionally, probable cause of criminal activity alone may not justify searching a place unless the officer can also rightly conclude that evidence of the crime will be found in the location.

In *United States v. Washington*, the court declined to find a nexus between the house searched and the suspects, stating that even though, the detectives saw the suspects leave the residence, that evidence was insufficient to connect the suspect with the house. 266 F. Supp. 2d 781, 785 (S.D. Ohio 2003). Instead, the Fourth Amendment required more; for example, "[h]ad the detectives continued surveillance of . . . [the residence] and observed the suspect routinely departing the house en route to sell drugs, they may have established probable cause for a search warrant." *Id.*

10

**IV. ANALYSIS**

In this case there is no connection between the Y-12 and SmartBank robberies and the later traffic stop and arrest of the two white males leaving the Southern Comfort rental property.    This is never more clear than when the government in attachment B of the search warrant, identifies the rental agreement as one of the "particular things to be seized" (Ex. 1 Attachment B, ¶7) from the property.  The rental agreement was necessary to determine whether the two men they arrested were the same that were renting the Southern Comfort house, and thereby, maybe the men that fled on September 3, 2015.  This affidavit lacks a nexus between the crimes, the people, the place, and the things to be seized.  All four of the important requirements of an affidavit and search warrant are missing here.  There is no connection between anyone and anything in this affidavit.

As the government is often quick to cite, the training and experience of law enforcement can occasionally help build an inferential link between events.  It should be noted that Special Agent Poynter's training and experience is actually one of the weakest parts in this affidavit.  For example, looking at his concluding paragraph Special Agent Poynter states "in my training and experience, I have learned that perpetrators of crimes will utilize similar methods, or Modus Operandi, when committing crimes specifically when they have eluded capture from previous crimes."  This training and experience, however, does not specify specialization in bank robberies, carjacking, stolen vehicles, kidnapping, or whether training in any of those crimes or his limited (he has only been an agent since 2013) experiences could help him correlate links in this completely disjointed affidavit.  *See United*

11

*States v. Hicks*, No. 5:12-CR-00006-TBR, 2012 WL 4460653, *1 (W.D.K.Y. Sept. 25, 2012).

The first five-pages of Agent Poynter's affidavit describe the events in Tennessee without establishing any probable cause or even reasonable suspicion that Mr. Benanti or Mr. Witham were involved in the SmartBank or Y-12 Bank robberies. Then, Agent Poynter describes a car chase in North Carolina stemming from an alleged stolen vehicle that Mr. Benanti is never linked to and that is never linked to the Tennessee robberies. Following that drastic shift, the remaining pages of the affidavit describe surveillance of a home and a subsequent vehicle pursuit that (1) never established probable cause that Mr. Benanti or Mr. Witham had any connection to the Tennessee bank robberies, (2) never established probable cause that Mr. Benanti or Mr. Witham were linked to the surveilled home, beyond a single visit on November 25, 2015, (3) never established probable cause that this home contained evidence of bank robberies, and (4) never established probable cause that Mr. Benanti was engaged in any criminal activity when the police arrested him after he voluntarily exited the vehicle driven by Mr. Witham.

A review of Sixth Circuit Opinions on nexus is necessary here. In *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) marijuana was found growing "near" the Carpenters' residence, but there was no evidence of a path leading from the house to the field or any witnesses seeing Carpenters' going to and from the field. "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'

In *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998), the affidavit did not provide a substantial basis for the issuing judge's conclusion that probable cause existed to search the Carpenters' residence, because it failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." In *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)) the Court stated "the critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought."

In *United States v. Hicks*, No. 5:12-CR-00006-TBR, 2012 WL 4460653, *1 (W.D.K.Y. Sept. 25, 2012) detectives were alerted to suspicious photos of possible child porn on Hicks' phone. Based on the photos on the phone, a statement by his ex that there might be child pornography on the computer, and a groping incident with his daughter, officers obtained a search warrant to search the computer. The court held that the affidavit did not establish a meaningful connection between Hicks' phone and laptop aside from their common ownership. "An affidavit must provide a 'substantial basis … to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at *3 (quoting *United States v. McNally*, 327 F.App'x 554, 556 (6th Cir. 2009); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000)).

In *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006) a man was arrested for a non-drug offense had drugs on him - but the court held that the drugs

found on his person did not establish requisite nexus to search his home for evidence of drug crimes.

Finally in *United States v. Sneed*, 385 Fed. Appx. 551, 558 (6th Cir. 2010), the affidavit to search defendant's vehicle for instrumentalities of a bank robbery *was* found to be sufficient because Sneed was seen in the bank before the robbery, had access to the getaway car where they found evidence of the bank robbery, he did not have a permanent address, was known to keep criminal instrumentalities in his car, and the vehicle was only blocks from the crime scene. The affidavit had "specific information linking Sneed to a specific robbery" that was corroborated by investigating officers. The distinctions between *Sneed* and this case are dramatic. *But see United States v. Savoca*, 761 F.2d. 292 (6th Cir. 1985) (time and distance found to break nexus for the bank robberies and the place to be searched).

To summarize:

- There is no nexus between the Y-12 bank robbery and the SmartBank robbery[4];

- There is no nexus between either of the two above bank robberies and the September 3, 2015 traffic chase in North Carolina;

- There is no nexus between the bank robberies and the first address the government finds, Rebel Ridge;

---

[4] As will be seen in the next section, what is represented in the affidavit regarding the description of the suspects in the bank robberies is incorrect.

- There is some, but not complete, nexus between in the affidavit between the Rebel Ridge address and the address eventually surveilled, Southern Comfort

- There is no identification of anyone who was surveilled, and moreover, no identification of the persons renting the Southern Comfort residence

- There is no connection between two white males driving the Nissan Pathfinder on November 25, 2015 and either the car chase on September 3, 2015 or the previous two bank robberies

- There is no connection between the two white males subsequently arrested and the identification of any persons, including renters of the Southern Comfort residence;

- There is no nexus at all between people, places, and things to be searched, and the crimes (Y-12 and SmartBank) that the government asserts as their probable cause for this affidavit.[5]

There is such a lack of nexus interlacing this affidavit that it is infirm on its face, lacking any probable cause to support a search warrant to search the Allison Drive residence (and all other search warrants relying on this information).

---

[5] It is inescapable that the recovery of some of the items taken from Mr. Benanti following his illegal arrest on November 25, 2015 can contribute, in a small part, to a finding of probable cause. It is Mr. Benanti's position that these items (including a "note" that does not relate back in time to the previous bank robberies) were obtained as a result of an illegal, warrantless arrest. This issue is raised in a separate motion, filed contemporaneously with this one.

**V. Staleness**

While Mr. Benanti does not wholly rely on staleness of the events herein, the issue arises because of the time frames involved in this case. The Sixth Circuit uses a four-factor test to determine staleness: "(1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal conduct (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). The length of time between the events related to in the affidavit and the application for the warrant are salient. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

The time involved between events herein makes *time* a relevant factor in the nexus issue. A simple review of the timing of events is helpful.

- An attempted bank robbery of the Y-12 Federal Credit Union, Oak Ridge, Tennessee on April 28, 2015 (hereinafter "Y-12")

- A bank robbery of the SmartBank, 202 Advantage Place, Knoxville, Tennessee on July 7, 2015 (hereinafter "SmartBank")

- A car chase in North Carolina on September 3, 2015

- The surveillance, and the illegal arrest of Mr. Benanti on November 25, 2015

This is an eight month period, with several months separating each event. "Staleness" is entirely relevant in any analysis of nexus in this case.

16

## VI. Material Misrepresentation

In addition to the clear lack of nexus between the people, places, and things to be searched and seized in this case. The presence of a material misrepresentation in the affidavit expounds upon the nexus issue, above. *Franks v. Delaware*, 438 U.S. 154, 163-64, n. 6 (1978), *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984), *United States* v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988), *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992). In *United States v. Sawyers*, 127 Fed. Appx. 174 (6th Cir. 2005) the Sixth Circuit laid out the test for a violation under *Franks*: 1. Substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false; and 2. The specified portions are necessary to a finding of probable cause. *See also Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998) (*Franks* is only applicable where defendant makes a strong preliminary showing that the affiant, with an intention to mislead, excluded critical information from the affidavit.). Because a "substantial showing" often requires extrinsic evidence, a <u>Franks</u> issue is an exception to the rule that the sufficiency of the evidence supporting probable cause is limited to the four-corners of the affidavit.

In *United States v. Martin*, 615 F.2d 318, 329 (6th Cir. 1980), the Sixth Circuit held that an omission made intentionally or with reckless disregard may be proven by independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit or "it is possible when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself."

As described earlier, this affidavit describes "two masked white males and a masked white female" accosting a Y-12 executive, his wife, and his adult son at 1916 Dobson Lane, Knoxville, Tennessee. The affidavit thereafter uses the term two "white masked males" in the Y-12 attempted robbery (Ex. 1, at page 2), and thereafter, describes the suspects in the events that occurred over the eight month period following the attempted robbery at Y-12 by their race. (See, e.g., Ex. 1 at page 4) "Two masked white males, similar in description to the previous robbery…."

Allison Ziegler, the wife of the Y-12 bank executive, described the robber who pointed a gun at her husband as a *black* male. (Ex.2, Interview of Allison Ziegler, Apr. 28, 2015, page. 1, line 25-26). She later stated, "[t]he black man was watching [me] while the other man was upstairs." (Ex. 2 page. 2, ln. 32). She states that the skinny, white guy was wearing a black bandana and a ball cap, while the black guy was wearing a black bandana, but no hat, because she remembers his shiny, bald head. (Ex. 2 page. 5, line 4-5, 7-9, 27). For over eight pages of her statement, she elaborates on the descriptions of the white woman, skinny white guy, and bald, medium skin tone, black man that broke into her home and held her and her family hostage. (Ex. 2 pages. 3-12). Throughout the interview, she distinguishes between the assailants by referring to them as "the black guy" or "the white guy."

None of this was mentioned in the affidavit, which goes to great pains in describing "two white males" throughout. (Ex. 1, at pages. 2, 4, 6, 7). The effect of this misrepresentation, whether intentional or reckless, flows through the whole

18

affidavit. The theme of "similarity" between events relies on large part on identification of the suspects of the bank robberies as "two white males." Identification of a black male in the Y-12 bank robbery breaks this attempted chain of similarity, and makes clear that the Y-12 and SmartBank robberies are not even connected with each other, let alone a September 3, 2015 car chase in North Carolina, and the November 25, 2015 arrest of Mr. Benanti.

The misrepresentation is not only material, it is essential. With the *only* connection in the affidavit being the race of the suspects of the bank robberies and the subsequent car chases and arrests, the revelation now that one of the suspect males was actually *black* means *nothing* is connected in this affidavit. The bank robberies are not connected with each other, the bank robberies are not connected with the car chases, and none of it is connected to the arrest that occurs on November 25, 2015. There is no nexus at any point in this case. The affidavit on its face is illegal, contains insufficient evidence for probable cause, and has no nexus regarding the events described of the crimes, people, places, things to be seized, and searched.

### VII. Mr. Benanti's Illegal Arrest

Mr. Benanti submits that his arrest on November 25, 2015 was illegal, and raises that issue in a motion filed contemporaneously with this one. That arrest was *warrantless*, and was made without probable cause. As a result of that arrest, law enforcement recovered items seized from Mr. Benanti that are described in this affidavit submitted to obtain the search warrant of 380 Allison Drive. In

19

particular, a "note" is recovered and bags containing other items listed in the affidavit. (Ex. 1 at page. 8, ¶ 29-30).

Should this Court find that Mr. Benanti's arrest was illegal, these items as used in the affidavit to assist in describing probable cause should be suppressed and the descriptions severed from this affidavit.

## Conclusion

ACCORDINGLY, Mr. Benanti respectfully requests that this Court issue an Order requiring the government to suppress all evidence in this case as a result of search warrant executed by the United States law enforcement officers and other state officers the search of 380 Allison Drive, Maggie Valley, North Carolina on November 26, 2015.

Defendant also requests oral argument in this matter.


RESPECTFULLY SUBMITTED THIS 2nd day of May, 2016.

/s/ RICHARD L. GAINES
RICHARD L. GAINES
Daniel & Gaines
550 W. Main Street, Suite 950
Knoxville, TN 37902
865/546 – 4292
richard@richardgaineslaw.com


s/ Robert R. Kurtz
Robert R. Kurtz
BPR No. 020832
Stanley & Kurtz, PLLC
422 S. Gay Street, Ste. 301
Knoxville, TN 37902
865/522-9942
rrkurtz@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ RICHARD L. GAINES
RICHARD L. GAINES