# "EXHIBIT 1"

# UNITED STATES DISTRICT COURT

for the

Western District of North Carolina

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. |
| | ) |
| Residence Located at 380 Allison Drive, | ) |
| Maggie Valley, North Carolina | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Western _____ District of _____ North Carolina _____
*(identify the person or describe the property to be searched and give its location)*:

See attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ~~December 10, 2015~~ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to   Dennis L. Howell _____ .
                                                              *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   November 26, 2015 at 12:03 am     *(signed)* Dennis L. Howell
                                                                              *Judge's signature*

City and state:   Burnsville, North Carolina          U.S. Magistrate Judge Dennis L. Howell
                                                                    *Printed name and title*
                                                              Western District of North Carolina

## ATTACHMENT A

### Property to Be Searched

The residence to be searched is located at 280 Allison Drive, Maggie Valley North Carolina. It is identified as a two story single family dwelling, tan in color with red shutters, and has the property nickname "Southern Comfort". Any vehicles located on this property, including the maroon Toyota Highlander.

11

## ATTACHMENT B

### Particular Things to be Seized

1. Firearms and ammunition

2. Clothing, masks, or any other item that may have been worn during the aforementioned offenses

3. Cell phones, cameras, GPS devices, computers, tablets, and any other electronic device that may contain evidence linking subjects to the aforementioned offenses

4. Currency, currency bands, bank flyers, deposit slips, or other banking materials which may have been taken from the aforementioned offenses and/or potential robbery locations

5. Receipts, ledgers, maps, or any other material which may reveal details about the crimes committed and/or similar crimes being planned, or locations traveled

6. Stolen vehicles and/or vehicle registration tags

7. Rental agreements, documents, bills, identification documents, or any other materials which may identify the occupants of the property

8. Identification of victims

9. Crowbar or any other burglary tools

10. Handcuffs, belly bands, or any other restraining devices or any other items which could be used in the act of kidnapping such as: hoods, blindfolds, duct tape, rope, etc.

11. Gasoline or fuel source containers

12. Trace evidence to include latent prints, hairs, fibers, DNA, or other forensic evidence

13. Bags or other items that could be used to carry large quantity of money

*Keanna E O'Hare*   Keanna E. O'Hare   11/27/15

*Jeffery S Blanton*   JEFFERY S. BLANTON   11/26/15

*[signature]*   Mickey R. Nucera   11/26/15

*[signature]*   Rory D Poynter   11/26/15

*[signature]*   BRIAN O'HARE   11/26/15

# UNITED STATES DISTRICT COURT

### for the

Western District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Residence Located at 380 Allison Drive,
Maggie Valley, North Carolina

)
)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
see attachment A

located in the _____ Western _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized):*
see attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | Offense Description |
|---|---|---|
| 18 U.S.C. § 2113 | Bank Robbery | |
| 18 U.S.C. § 1201 | Kidnapping | |
| 18 U.S.C. § 1203 | Hostage Taking | |

The application is based on these facts:
see attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Rory Poynter, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 25, 2015

City and state: Bransonville, NC

_____
*Judge's signature*

U.S. Magistrate Judge Dennis L. Howell
*Printed name and title*

Western District of North Carolina

IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
RESIDENCE LOCATED 380 ALLISON
DRIVE, MAGGIE VALLEY, NORTH
CAROLINA

Case No. _____

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rory Poynter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for the premises located at 380 Allison Drive, Maggie Valley, North Carolina, and any/all outbuildings associated with this property (TARGET LOCATION).

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since February 2013.  I am assigned to investigate violations of Federal law, including violent crimes.  Prior to my employment with the FBI, I was a Police Officer for the City of Peoria, Illinois since 2004 and was last assigned to the Street Crimes Unit.  I have had training and experience in responding to violent crime incidents and interviewing subjects, witnesses, and victims of violent crimes.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe violations of 18 U.S.C. §§ 2113 (bank robbery), 1201 (kidnapping), and 1203 (hostage taking) have been committed. There is also probable cause to search the information described in Attachment A for evidence of this crime and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

### Robbery of Y-12 Federal Credit Union—April 28, 2015

5.      On April 28, 2015, at approximately 8:15 a.m., an executive with Y-12 Federal Credit Union (hereinafter "V1"), his wife (hereinafter "V2"), and their adult son (hereinafter "V3"), were accosted by two masked white males armed with handguns and a masked white female at the victims' residence at 1916 Dobson Lane, Knoxville, Tennessee.

6.      V1 was instructed by the suspects to drive to the Y-12 Federal Credit Union located at 501 Lafayette Drive, Oak Ridge, Tennessee, and obtain a large amount of United States currency from the credit union. V1 complied with the suspects' demands and proceeded to drive to the credit union.

7.      V2 and V3 were bound and blindfolded by the suspects and driven around by the suspects in a vehicle owned by the victims.

8.      Prior to V1 departing his residence for the credit union, the suspects used V1's cellular telephone to connect to V2's cellular telephone that they had taken. The suspects instructed V1 to keep his cellular telephone in his pocket, with the call connected to V2's phone, so that the suspects could monitor V1's activities while he travelled to and was at the credit

2

union. The suspects maintained control of V2's telephone while driving around in the victims' vehicle.

9.      While at the credit union, V1 wrote a note to employees referencing a home invasion and robbery because he knew that the suspects were listening and monitoring his activities. One of the bank employees subsequently contacted the Oak Ridge Police Department regarding V1 and the note he had given them.

10.      V1 obtained a large amount of United States currency from the credit union vault and returned to his car. Shortly thereafter, V1 was approached by officers of the Oak Ridge Police Department.

11.      V1 announced to the suspects, through the open line on the cellular telephone, that he was being approached by the police and asked them for instructions.

12.      Shortly thereafter, the suspects aborted their plans, disconnected the call with V1, threw V2's telephone out of the car window, and a short time later, abandoned V2 and V3, still bound and blindfolded, in the parking lot of the Gettysvue clubhouse in Knoxville, Tennessee. The suspects fled in the victims' vehicle and have not been located. The suspects of this crime (the "Y-12" crime) were not identified or apprehended. The victim's vehicle, a 2015 Lexus, was found abandoned and had been set on fire.

### Robbery of SmartBank—July 7, 2015

13.      Several months later, a similar crime was perpetrated on another local bank executive and his family.

3

14.     On July 7, 2015, at approximately 7:30 am, two masked white males, similar in description to the previous robbery, openly possessing firearms and a crowbar, forced their way into the home located at 8415 Swathmore Court, Knoxville, Tennessee 37919. At the time of the home invasion, the home was occupied by an executive at SmartBank (hereinafter "W1"), his wife (hereinafter "W2"), and their 5-month old infant son (hereinafter "W3"). The victims barricaded themselves in the master bathroom as the armed suspects used the crowbar to pry open the master bedroom door. Having pried their way into the master bedroom, the armed suspects next pried their way into the master bathroom.

15.     Once in the master bathroom, the armed suspects told W1 that he (W1) was going to help them rob his bank. The suspects told W1 to put on a shirt with a breast pocket. The armed suspects then ordered W1 and W2, who held W3 in her arms, downstairs and into the garage. Once in the garage, W1 observed an assault rifle with a curved magazine in W3's stroller. This assault rifle did not belong to the victims.

16.     The armed suspects blindfolded W1 and affixed a "belly-belt" around his waist and secured his wrists with handcuffs through the belt. They then instructed W2 to place W3 in the car seat in W2's silver Mazda 6 four-door sedan, which was parked in the garage. After placing W3 in the car seat, the subjects blindfolded W2. W1, W2, and W3 sat in the back seat of the car while the armed suspects occupied the two front seats. Prior to leaving the house in the car, one of the armed suspects told the family that failure to do what the armed suspects said could result in the family being killed.

17.     After leaving the home in the car with the victim-family held hostage in the car, W2 heard one of the suspects begin to utilize a GPS device.

18.     The armed suspects parked the car in an area behind the SmartBank, which is

4

located at 202 Advantage Place, Knoxville, Tennessee 37922. W1's blindfold was removed, at which time W1 observed that the two armed suspects were now wearing masks depicting old men faces. The armed suspects directed W1 to initiate a cell phone call from his cell phone to W2's cell phone that they had taken. Once the call was connected, W1 placed his cell phone in his shirt breast pocket and maintained an open line with W2's cell phone, which the armed suspects monitored. The subjects told W1 that they would be monitoring the open line while W1 robbed the bank, and that W1's wife and infant son would be hurt if W1 terminated the call or instructed anyone to call the police.

19.     The armed suspects gave W1 an empty cloth bag and instructed him to enter the bank and remove money from the vault. W1 did as instructed and obtained approximately $195,000 in cash and placed the money inside the bag and left the bank. The armed suspects met W1 in the SmartBank's parking lot. The passenger side door opened up and one of the armed suspects instructed W1 to hand over the money bag. W1 asked if, after turning over the money bag, his wife and child would be released. The armed suspect again directed W1 to turn over the money bag and also informed W1 that his family would not be released, but that they would not be hurt so long as W1 complied. W1 gave the money bag to the armed suspect and the car immediately sped away with W2 and W3 still in the car, leaving W1 in the bank parking lot.

20.     While in the car, W2 could hear the armed suspects talking to each other. She also heard what sounded like the two armed suspects talking to another person who was not inside the car.

21.     The armed suspects drove to a densely wooded area off of a gravel road on Pipkin Lane. W2 was told to remain in the car and count for approximately ten minutes, after which W2 could get out of the car and find her car keys on the ground. W2 heard the men get out of

5

her car and moments later heard another vehicle. After several minutes, W2 got out of her car, found her keys, and drove to find help.

22.     During the course of the investigation the FBI interviewed many people, including the victims' neighbors who live on Swathmore Court, which has a cul-de-sac. One of the neighbors said that on July 1 at approximately 5:30pm, he observed a car parked on the street that he did not recognize. The neighbor observed two males and a female inside the unfamiliar car.

## Vehicle Chase—September 3, 2015

23.     On September 3, 2015, the North Carolina State Highway Patrol was involved in a vehicle pursuit with a vehicle determined to be stolen from New Hampshire. Two white males, each carrying black duffel bags, fled from the vehicle and were pursued on foot, but the pursuit was terminated by the Trooper, who believed he was going to be ambushed. The subjects escaped.

24.     Suspecting that these subjects may be related to the aforementioned robberies, FBI Johnson City Resident Agency, Knoxville Division Agents/TFOs examined a GPS device found in the abandoned, stolen vehicle and found a track to the address of 124 Rebel Ridge Road, Canton, North Carolina. Further investigation revealed that the Rebel Ridge address is managed by a rental company named Premier Vacation Rentals (PVR). Investigators made contact with a PVR employee and learned that two white males in their 30s began renting cabins from PVR on June 19, 2015. The same two males stayed at 124 Rebel Ridge Road from July 27, 2015- October 25, 2015. The cabin rental was extended to November 15, 2015. The employee said the two males placed a deposit on "Southern Comfort" to be occupied on November 16, 2015 which has been identified as a nickname for the TARGET LOCATION, another property

6

managed by PVR.

## Tracking to Target Location

25.     FBI Asheville Resident Agency, Charlotte Division obtained a consent to search of 124 Rebel Ridge Road and processed the scene for trace evidence on November 19, 2015. The FBI also notified Haywood County Sheriff's Office (HCSO) about their actions and the unfolding investigation. HCSO agreed to conduct physical surveillance on the TARGET LOCATION when available in order to determine if there were any new vehicles arriving or if probable cause for arrest could take place.

26.     On November 24, 2015 HCSO investigators were conducting surveillance of the TARGET LOCATION when they observed a maroon Toyota Highlander with a South Carolina license tag leave the TARGET LOCATION driven by a white male. Surveillance was conducted as the vehicle drove into Maggie Valley and stopped at a gas station. Investigators ceased surveillance after it was returning to the TARGET LOCATION. A registration check of that tag returned to a GMC Yukon.

## Vehicle Chase—November 25, 2015

27.     On November 25, 2015 at approximately 11:30 A.M. your affiant was notified by HCSO investigators that a surveillance team had observed a gray Nissan Pathfinder, occupied by two white males leaving the TARGET LOCATION. They conducted a registration check of the vehicle and determined it to have stolen license tags out of Maryland. NCSHP Troopers were notified and a traffic stop was attempted on I-26 Eastbound. The driver ignored the emergency lights and sirens of the NCSHP vehicles and proceeded on I-26 Eastbound to Long Shoals Road, at which point it exited the Interstate and re-entered the I-26 Eastbound on-ramp. The driver stopped, the passenger door opened, and a white male, later identified as MICHAEL ANTHONY

7

Case 3:15-cr-00177-TAV-DCP   Document 33-1   Filed 05/02/16   Page 14 of 17   PageID #: 151

BENANTI (BENANTI), exited the vehicle and was taken into custody. The driver then proceeded onto I-26 Eastbound until driving into the median and started driving on I-26 Westbound to the Long Shoals exit. The driver continued on Long Shoals and left the roadway into a construction site, at which time he exited the vehicle and fled on foot. During the foot pursuit the driver reached into his jacket and yelled "You want to get shot" at pursuing officers. The driver was taken into custody shortly thereafter. The driver refused to provide identity, but was later identified to be BRIAN WITHAM (WITHAM).

28.　　Law enforcement officers determined that the Nissan Pathfinder occupied by WITHAM and BENANTI was stolen out of Maryland, in addition to having stolen Maryland license tags.

29.　　BENANTI was transported to the scene of where WITHAM was taken into custody. While BENANTI was handcuffed he began fidgeting and in what was believed to be an effort to conceal an item in his hand. Officers seized from his hand a balled-up sheet of paper which had handwritten notes of addresses later identified as bank locations, and names of individuals later confirmed to be bank employees. This sheet of paper also contained SC license tag numbers. Also contained in the note were the words "FIND CEO," "FIND CARS AT BRANCH," and "CALL, WATCH IT CLOSE."

30.　　Both BENANTI and WITHAM had black bags, each of which contained black rubber gloves. BENANTI kept his bag with him when he was taken into custody and WITHAM's bag was carried with him during the foot pursuit. BENANTI's black bag also contained a digital camera, food items, a cell phone charger, a stocking cap, and a monocular scope. BENANTI was in possession of approximately $1500 and a key to a Lincoln vehicle.

31.　　Upon WITHAM being transported to Buncombe County Detention Facility, the

8

NCSHP Trooper who was involved in the vehicle chase on September 3, 2015 positively identified WITHAM to be the driver who fled from him during the earlier chase. The same Trooper did not identify BENANTI as being involved in that same pursuit.

32. A search of the subject vehicle was conducted and a black stocking cap, gloves, and two cell phones with the batteries removed wrapped in plastic were found. A full 5-gallon can of gasoline was located in the vehicle.

33. Based on my training and experience, I know that criminals rely heavily on cellular phone communication and often times will communicate via text, have co-conspirator contact information, take photographs and video, and utilize their cellular phones for mapping/GPS purposes.

## CONCLUSION

34. Based on the forgoing, I request that the Court issue the proposed search warrant for the property described in Attachment A in order to obtain evidence described in Attachment B. In my training and experience, I have learned that perpetrators of crimes will utilize similar methods, or Modus Operandi, when committing crimes specifically when they have eluded capture from previous crimes. The events occurred on November 25, 2015 demonstrate a willingness to flee from law enforcement to avoid prosecution and/or to destroy evidence and show Modus Operandi of similar characteristics to the aforementioned offenses.

9

Respectfully submitted,

Rory D. Poynter
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on ~~November 25,~~                , 2015


Dennis L. Howell
United States Magistrate Judge
Western District of North Carolina