IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　)　　　　No. 3:15-CR-177
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
MICHAEL BENANTI,　　　　　　　)　　　　(VARLAN / SHIRLEY)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　)


## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate.  Defendant Benanti asks [Doc. 33] the Court to suppress all

evidence stemming from the November 26, 2015 search of a rental cabin at 380 Allison Drive,

Maggie Valley, North Carolina, because said search was conducted in violation of his rights

under the Fourth Amendment.  The Defendant argues that the search warrant is invalid because

the affidavit in support of the search warrant fails to provide a nexus between the crimes alleged,

the individuals involved, and the place to be searched or items to be seized.[1]

---

[1] The evidence seized from the search of the Allison Drive cabin was presented in subsequent
affidavits in support of seven additional search warrants.  The Defendant also contends [Doc. 34]
that if the evidence seized from the Allison Drive cabin is suppressed, then the evidence from
each of these seven search warrants must also be suppressed as fruit of the poisonous tree.  The
Defendant acknowledges, however, that if the Court upholds the search warrant for the Allison
Drive cabin, his Omnibus Motion to Suppress All Subsequent Search Warrants [Doc. 34] is
moot.  The Defendant asks that this Omnibus motion be held in abeyance until after the District
Judge rules on the instant Motion to Suppress Evidence Obtained at 380 Allison Drive
("Southern Comfort") [Doc. 33].

1

The parties appeared for a hearing on this and all pending motions on June 2, 2016.[2] Assistant United States Attorneys David P. Lewen and Steven H. Cook appeared on behalf of the Government. Attorneys Robert R. Kurtz and Richard L. Gaines represented the Defendant who was also present. The Court heard the arguments of counsel and received exhibits, before taking the motion under advisement on that day. For the reasons discussed in full below, the undersigned finds that law enforcement searched 380 Allison Drive pursuant to a valid search warrant. The Court recommends that the Defendant's Motion to Suppress Evidence Obtained at 380 Allison Drive ("Southern Comfort") [Doc. 33] be denied.

## I.    POSITIONS OF THE PARTIES

Defendant Benanti is charged [Doc. 30] with conspiring to obstruct, delay, or affect commerce by committing robbery and extortion with regard to commercial entities in Pennsylvania, Connecticut, Tennessee, North Carolina, South Carolina, and Georgia (Count One), and with possession of a firearm in furtherance of a crime of violence in relation to this conspiracy (Count Two). He is also charged with three sets of the following offenses: Bank robbery by extortion with use of a dangerous weapon (Counts Three, Ten, and Seventeen); use of a firearm in relation to the bank robbery by extortion (Counts Four, Eleven, and Eighteen); carjacking (Counts Five, Twelve, and Nineteen); use of a firearm in furtherance of carjacking (Counts Six, Thirteen, and Twenty); kidnapping (Counts Seven, Fourteen, and Twenty-one); using a firearm in furtherance of kidnapping (Counts Eight, Fifteen, and Twenty-two); and being a felon in possession of a firearm (Counts Nine, Sixteen, and Twenty-three). These charges arise

---

[2] The Court also heard evidence and argument on the Defendant's other pending motions, which will be addressed by separate report and recommendation or memorandum and order.

out of the April 28, 2015 attempted robbery of the Y-12 Federal Credit Union in Oak Ridge, Tennessee; the July 7, 2015 robbery of the SmartBank in Knoxville, Tennessee; and the October 21, 2015 attempted robbery of the Northeast Community Credit Union in Elizabethton, Tennessee.

On November 26, 2015, law enforcement searched a rental cabin at 380 Allison Drive, in Maggie Valley, North Carolina ("the Allison Drive cabin"), pursuant to a search warrant. Special Agent Rory Poynter of the Federal Bureau of Investigation provided a nine-page affidavit in support of this search warrant, which was issued by United States Magistrate Judge Dennis L. Howell of the Western District of North Carolina.

Defendant Benanti argues [Doc. 33] that the search warrant affidavit [Doc. 33-1] fails to provide a nexus between the bank robberies and the place to be searched, the individuals who were arrested, and the items to be seized. Additionally, he argues that much of the information in the affidavit is stale and cannot provide probable cause to believe that evidence of kidnappings and bank robberies in April and July 2015 would be in a rental cabin in another state in November 2015. He also maintains that the affidavit contains a material misrepresentation with regard to the race of one of the two perpetrators of the April 28, 2015 kidnapping and attempted robbery. He contends that this misrepresentation is critical to the nexus issue. Finally, the Defendant argues that information stemming from his illegal arrest on November 25, 2015, cannot be considered in the probable cause determination. The Defendant contends that once the Court strikes the information on the items seized from his person and bag following his November 25, 2015 arrest, the evidence supporting any type of nexus within the search warrant affidavit goes from slim to none.

The Government responds [Doc. 46] that Agent Poynter's affidavit provides probable cause for the issuance of the search warrant to search the Allison Drive cabin for evidence of the April 28 and July 7 bank robberies and kidnappings. It contends that the information in the affidavit is not stale because the bank robberies and kidnappings in this case were an ongoing criminal scheme and because the evidence of a bank robbery includes items of enduring value, such as firearms, that a perpetrator is likely to keep. Moreover, the Government asserts that the Defendant has failed to make a prima facie showing that the affidavit contains a material misrepresentation, such that the Court may consider extrinsic evidence beyond the four corners of the affidavit. Alternatively, it argues that even if the Court were to consider the statement of one of the victims of the attempted robbery of the Y-12 Federal Credit Union, this information would not negate the probable cause for the search warrant. The Government contends that the Defendant was properly arrested based upon probable cause and, thus, the evidence seized from his person and bag subsequent to his arrest were properly considered by the reviewing magistrate judge. Finally, the Government contends that law enforcement acted in good faith in seeking the search warrant for the Allison Drive cabin and that, therefore, the Court should not apply the exclusionary rule in this case.

## II.     ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Defendant contends that although the search of the Allison Drive cabin

4

was pursuant to a search warrant, the search warrant was not based upon probable cause. The issuing judge's determination that probable cause exists is entitled to "'great deference.'" United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); see also Whiteley v. Warden, 401 U.S. 560, 565 (1971).

In the instant case, the Defendant asks the Court to suppress evidence from the November 26, 2015 search of the Allison Drive cabin because the search warrant was invalid, as there was no probable cause for it to be issued. He contends that the affidavit in support of the search warrant failed to provide probable cause for its issuance because (1) the information contained therein fails to provide a nexus between the crimes alleged, the place to be searched, and the items to be seized; (2) the information in the affidavit is stale; (3) the affidavit contains a material misrepresentation that is vital to the probable cause finding; and (4) the affidavit cannot provide probable cause without the information gained through his illegal arrest. The Court considers each of these issues, along with the Government's good faith argument, in turn.

## A. Nexus

The Defendant argues that Agent Poynter's affidavit fails to demonstrate a nexus between the alleged bank robberies and kidnappings and the Allison Drive cabin. He argues that there is no link between the masked perpetrators of the crimes in Oak Ridge and Knoxville, Tennessee; the two while males involved in the September 3, 2015 car chase in North Carolina; and the two white males who left the Allison Drive cabin, in Maggie Valley, North Carolina, on November 25, 2015. Moreover, the affidavit provides no basis to believe that evidence of the East Tennessee bank robberies will be found at the Allison Drive cabin.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" Id. (quoting United States v. Van Shutters, 163 F.3d 331, 336–37 (6th Cir. 1998)). "[T]his nexus may be established by the nature of the items and normal inferences of where a person would keep such items." United States v. Hawkins, 278 F. App'x 629, 634 (6th Cir.), cert. denied, 555 U.S. 1019 (2008). An officer's training and experience regarding where criminals keep contraband or proceeds is relevant to the probable cause determination, but it alone cannot provide a nexus between the location to be searched and the crime. See United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994).

In the instant case, the Court finds that direct evidence links the bank robberies and kidnappings on April 28 and July 7, 2015, to the cabin at 380 Allison Drive. First, Agent Poynter's affidavit describes a kidnapping and attempted robbery on April 28, 2015, and a kidnapping and robbery on July 7, 2015, that have the following distinctive similarities: In both incidents, bank executives and their families were confronted by two armed, masked males who

6

forced their way into the victims' homes in the morning shortly before the banks were to open. On both occasions, the perpetrators forced the bank employee to rob or attempt to rob his own employer by taking the employee's family members hostage. In both incidents, the perpetrators required the bank employee to call the cellular telephone of the hostage family member and to keep his own phone on his person with the line open so that the perpetrators could monitor the employee's compliance with the perpetrators' demands. Then, the perpetrators required the employee to enter the bank, while the employee's bound and blindfolded family members remained in their own car with the perpetrators, who threatened to harm the family members if the employee did not do as they directed. In both incidents, the perpetrators abandoned the employee's family members and vehicle at a separate location. In the July 7, 2015 kidnapping and robbery, one of the victims heard one of the suspects use a GPS device. The Court finds that the unique way in which this robbery and attempted robbery were committed gave the reviewing judge probable cause to believe that these crimes were committed by the same two men, pursuant to a unique common scheme or plan.

The Court also finds that the affidavit of Agent Poynter provides a nexus between the two men involved in the September 3 car chase in North Carolina, and the Allison Drive cabin. The September 3 car chase involved a stolen vehicle and ended with the occupants, two white males, carrying black duffel bags, escaping on foot. A GPS device was found in the abandoned vehicle, and it contained a track to a rental property at 124 Rebel Ridge Road, in Canton, North Carolina. Law enforcement interviewed an employee of the rental company, who stated that the cabin at 124 Rebel Ridge Road was rented to two white males in their 30's from June 19, 2015, to November 15, 2015. The rental company employee stated that the same two men then rented a cabin, managed by the same rental company, at 380 Allison Drive, beginning

7

on November 15, 2015. Law enforcement conducted surveillance on the Allison Drive cabin, and on November 25, 2015, they observed two white males leaving the cabin in a vehicle bearing stolen license tags.

North Carolina State Highway Patrol ("NCSHP") troopers attempted to stop the vehicle, driven by the two white men who left the Allison Drive cabin, but the driver ignored their lights and sirens and a chase ensued. The vehicle stopped briefly, the passenger got out, and the driver fled in the vehicle. The driver, Brian Witham, was subsequently apprehended, and a NCSHP trooper, who was involved in the September 3 chase, positively identified him as the driver who fled the vehicle in the September 3 chase. The passenger, Michael Benanti, was also taken into custody. The vehicle driven by Witham and in which Benanti had been a passenger was a stolen Nissan Pathfinder. At the time Benanti got out of the Pathfinder and Witham fled the Pathfinder, each carried a black bag. The Court finds that this information links Benanti and Witham to the September 3 car chase and identifies them as the two men who had previously rented the Rebel Ridge Road cabin and were currently renting the Allison Drive cabin.

Finally, the Court finds that the affidavit contains direct evidence that provides a nexus between Benanti and Witham, who were renting and staying at the Allison Drive cabin, and the bank robberies and kidnappings alleged in the affidavit. First, the affidavit relates that Benanti and Witham had left a GPS unit in the stolen vehicle from which they fled on September 3, 2015. The affidavit also states that the kidnapped wife in the July 7 robbery heard one of the perpetrators use a GPS device, when they left the employee's home and proceeded toward the bank in the victims' car. Second and significantly, law enforcement seized a wadded piece of paper from Benanti's person shortly after his arrest on November 25, 2015. Benanti was attempting to conceal the paper in his hand. The paper bore handwritten notes of addresses,

8

which were later identified as bank locations; the names of persons later identified to be bank employees; and the words "FIND CEO," "FIND CARS AT BRANCH," and "CALL, WATCH IT CLOSE," each of which appear to comport with the unique scheme or plan used in the aforementioned kidnappings and robberies. Third, the bags which both Witham and Benanti carried when they exited the Pathfinder on November 25 contained black rubber gloves. Benanti's bag also contained a digital camera, food items, a cellular telephone charger, a stocking cap, and a monocular scope. While none of these items are necessarily incriminating in and of themselves, the reviewing judge could reasonably infer, when considering the items in conjunction with the paper taken from Benanti's person, that Benanti intended to use these items for surveillance, in casing banks and bank employees for future crimes like those described in the affidavit, and/or for use in the common scheme or plan. Accordingly, the Court finds that the affidavit contains a nexus between the robberies and kidnappings on April 28 and July 7 and Benanti and Witham, who were staying at the Allison Drive cabin.

The Defendant argues that the affidavit is devoid of information that evidence of the crimes alleged would be found at the Allison Drive cabin. "[A]n issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence." United States v. Williams, 544 F.3d 683, 688 (6th Cir. 2008), cert. denied, 130 S. Ct. 108 (2009). In Williams, the Court affirmed the inference of a nexus between the defendant's home and the firearms he used in furtherance of drug trafficking because he could be expected to keep the instrumentalities of his crimes at his home "[m]uch like a bank robber would keep the proceeds and instrumentalities of his robbery in his home." Id. In United States v. Cobb, the Sixth Circuit affirmed the inference of a nexus between a robber's residence and the clothing worn and firearm used during the robberies:

9

> [T]he affidavit set forth sufficient facts to permit the
> issuing judge to infer a link between the evidence sought and [the
> defendant's] residence. It noted that [the defendant] wore similar
> or the same clothing and used a similar or the same gun in both
> bank robberies. The reasonable inference is that this clothing and
> gun likely would have been in [the defendant's] possession six
> weeks following the final robbery (when the affidavit was signed)
> either to hide or potentially use in a future robbery.

397 F. App'x 128, 133 (6th Cir. 2010), see also United States v. Jackson, 240 F. App'x 88, 90 (6th Cir. 2007) (affirming the nexus to support proceeds from the bank robbery being at the defendant's home, although the defendant was arrested elsewhere).

To bring the nexus full circle in the instant case, the Court finds that the issuing judge could reasonably infer that evidence from the April 28 and July 7 robberies and kidnappings would be found at the Allison Drive cabin. First, the affidavit reveals that Benanti and Witham (the two men from the September 3 car chase) had been renting the Allison Drive cabin since November 16, 2015. The fact that they had moved their residing location from the Rebel Ridge Road cabin, which they had rented for twenty-one weeks and during the time of the July 7 robbery of the SmartBank, to the Allison Drive cabin suggests that the Allison Drive cabin was now their base of operations. The nature of the items that were used to perpetrate the two bank robberies and kidnappings—guns, masks, blindfolds, clothing, etc.—and the normal inferences of where one would retain such items—in one's residence—gave the issuing judge probable cause to believe that evidence of the bank robberies and kidnappings would be found at the Allison Drive cabin. See Hawkins, 278 F. App'x at 634 (holding that the nexus may be supplied by the nature of the items sought and the normal inferences as to where those items would be kept).

Accordingly, the Court finds that Agent Poynter's affidavit provides a nexus between the April 28 attempted bank robbery and kidnapping, the July 7 bank robbery and kidnapping, and the Allison Road cabin, which was rented by Defendant Benanti.

## B. Staleness

The Defendant argues that the relevant events in Agent Poynter's affidavit—the April 28, 2015 attempted robbery of the Y-12 Federal Credit Union; the July 7, 2015 robbery of the SmartBank; the September 3, 2015 car chase in North Carolina; and his arrest on November 25, 2015—occurred over an eight-month period and were each several months apart. Thus, he contends that due to the staleness of the information with regard to the two robberies and the car chase, the issuing judge did not have probable cause to believe that evidence of the April 28 and July 7 bank robberies and kidnappings would be at the Allison Drive cabin on November 26, 2015.

Whether information in an affidavit is stale does not depend upon an arbitrary time limitation but is tied to the nature of the crime, the criminal, the location of the search, and the items sought. United States v. Spikes, 158 F.3d 913, 923-24 (6th Cir. 1998), cert. denied, 525 U.S. 1086 (1999).

> [C]ourts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc."

Id. at 923 (quoting Andresen v. State, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975)). The length of time from the events in the affidavit to the warrant application is important but not controlling.

11

Id. at 923. "Evidence of ongoing criminal activity will generally defeat a claim of staleness." United States v. Greene, 250 F.3d 471, 481 (6th Cir. 2001).

Here, the Court agrees with the Government that the affidavit provides evidence of an ongoing crime spree and, thus, the probable cause is not stale. Three of the four variables from Spike reveal that the information in the affidavit was not stale. First, the character of the crimes under investigation reveal them to require a high degree of planning and coordination. The paper found on Defendant Benanti's person on the day of his arrest shows that the conspiracy to kidnap and extort bank executives and their families was ongoing. "Evidence of ongoing criminal activity will generally defeat a claim of staleness." United States v. Greene, 250 F.3d 471, 481 (6th Cir. 2001).

Although Benanti and Witham were arguably more nomadic, than ensconced, as they had moved to a different rental cabin during the time frame covered by the affidavit, the court finds that both the third factor (the enduring value of the items to be seized) and the fourth factor (the securing of a base of operations) support a finding that the information in the affidavit was not stale. The types of items to be seized—firearms and ammunition, masks, tools, computers, tablets, and other electronic devices—were durable goods of enduring value to Benanti and Witham. See United States v. Pritchett, 40 F. App'x 901, 906 (6th Cir. 2002) (holding information that witness had seen crates of weapons in defendant's house four months earlier was not stale because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time"). Additionally, the affidavit reveals that the Allison Drive cabin was the Defendant's base of operations, rather than a venue with which he had only passing ties. He had been renting this cabin for nineteen days and was observed coming from this cabin just before his arrest. His five-month stay at the Rebel Ridge Road

12

cabin, prior to moving to the Allison Road cabin, suggests that the Defendant was entrenched in the Maggie Valley area. Accordingly, the Court finds that the information in the affidavit was not stale.

### C. Material Misrepresentation or Omission

The Defendant argues that Agent Poynter's affidavit contains a material misrepresentation with regard to the race of one of the perpetrators of the April 28, 2015 kidnapping and attempted robbery of the Y-12 Federal Credit Union. He argues that in her statement, Renee Zeigler, the wife of the bank executive and one of the hostages in the April 28 incident, described one of the perpetrators as a black male. However, the search warrant affidavit states that the April 28 crimes were perpetrated by two white males and a white female. He contends that the Court may look beyond the four corners of the affidavit to Renee Zeigler's statement because the description of the perpetrators of both robberies and kidnappings as two white males is critical to the probable cause determination. The Defendant argues that the only similarity in the two robberies and kidnappings, the September 3 car chase, and the November 25 stop of the Nissan Pathfinder and arrest of its occupants was the presence of two white males. He asserts that the "revelation now that one of the suspect males was actually *black* means *nothing* is connected in this affidavit" and any nexus is vitiated. [Doc. 33, p.19]

The Government responds that the Defendant has failed to make the required *prima facie* showing that Agent Poynter deliberately or recklessly omitted Mrs. Zeigler's description of one of the perpetrators as black and that this fact was critical to the probable cause finding. Moreover, it contends that even if Mrs. Zeigler's description of one of the perpetrators as black was included along with her husband's description of the same individual as Hispanic

13

and her adult son's description of that person as white, the affidavit still provides probable cause to issue the search warrant.

As discussed above, in determining the sufficiency of probable cause to issue the search warrant, the Court is "concerned only with the statements of fact contained in the affidavit." Hatcher, 473 F.2d at 323; see also Whiteley, 401 U.S. at 565. In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (alterations in original). In other words, the Court does not look beyond the four corners of the affidavit in assessing whether it provides probable cause.

In Franks v. Delaware, 438 U.S. 154, 155, 164 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to contest the truthfulness of sworn statements of fact in a search warrant affidavit. Sworn affidavits in support of search warrants are, in the first instance, presumed to be valid. Id. at 171. Nevertheless, a defendant may attack the veracity of factual statements in the affidavit under certain limited circumstances:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Id. at 155-56; see also United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). If the defendant makes this showing and is granted what has come to be known as a "Franks hearing,"

14

he or she must show by a preponderance of the evidence that the affiant intentionally or recklessly included false statements, which are necessary to the probable cause finding, in the affidavit. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934. If the defendant successfully makes this showing, the evidence gained as a result of the search must be suppressed. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934.

The Government states that the description of the two male perpetrators of the April 28 crimes as white reflects at most an omission, rather than a false statement, because Mark Ziegler, the bank executive, described the male perpetrators as white and Hispanic and Zachary Ziegler, the adult son of Mr. and Mrs. Ziegler, described both male perpetrators as white. Material omissions may also merit a Franks hearing in certain circumstances: "Although material omissions are not immune from inquiry under Franks, . . . an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." United States v. Adkins, 107 F.3d 1213, 1217 (6th Cir. 1997). Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir.), cert. denied, 524 U.S. 942 (1998). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." Adkins, 107 F.3d at 1217.

15

As stated above, before the Court will look beyond the four corners of Agent Poynter's affidavit, Defendant Benanti must make a substantial preliminary showing that (1) information was excluded from the affidavit, (2) that this information was necessary to the probable cause determination, and (3) that Agent Poynter omitted this information with the intention to mislead the judge or with reckless disregard for the truth.[3] The Defendant contends that information that Ms. Zeigler described one of her assailants on April 28, 2015, as a black male was omitted from the affidavit. He contends this information is material because the sole connection between the April 28, 2015 kidnapping and attempted bank robbery; the July 7, 2015 kidnapping and bank robbery; the September 3, 2015 car chase; and the November 25, 2015 stop

---

[3] The Court agrees with the Government that the Defendant, to date, has not requested a Franks hearing. In its response [Doc. 46, p. 32 n.10], the Government observes that the Defendant appears to assume he is entitled to a Franks hearing. At the June 2 motion hearing, defense counsel again did not request a Franks hearing. Instead, after the Court noted that the Defendant had not yet requested a Franks hearing, Mr. Gaines stated that he anticipated preparing a post-hearing brief on whether the affiant acted in bad faith in the omission. (The Court observes that the Defendant did not file a post-hearing brief on this issue.) He agreed that all he would do at a Franks hearing would be to introduce the statement of Renee Ziegler. The Government objected, arguing that the introduction of Mrs. Ziegler's statement would not satisfy the preliminary requirement that the defendant show the affiant intentionally or recklessly omitted the material fact. The undersigned observed that the discussion of the "Franks issue" in the Defendant's motion and at the motion hearing was not a Franks hearing. Moreover, the Court declined to set a precedent in which a party had only to mention Franks and the Court was obligated to set aside the presumption that the sworn statements in a search warrant affidavit are true and conduct an analysis of the impact of additional information on the probable cause determination. At the conclusion of the testimony, the Defendant introduced the transcript of Renee Ziegler's statement [Exh. 11], and the Government did not object. During argument, Mr. Gaines maintained that while the "Franks issue" would not, alone, carry the day, it illustrates the absence of any nexus between the crimes alleged and the location to be searched. Additionally, he argued that the omission of Ms. Ziegler's description of one of her assailants as black reveals that Agent Poynter did not act in good faith, such that he should receive the benefit of the Leon good faith exception.

In the typical case, if and when, the Defendant makes a *prima facie* showing of a material omission, then the Court will conduct a Franks hearing to take evidence on the omitted facts and to determine if the omitted information was critical to probable cause. Accordingly, at this stage, the Court only examines whether the Defendant made the requisite *prima facie* showing.

16

of a Nissan Pathfinder and arrest of its occupants was that two white males were involved in each of these events. Relying on United States v. Martin, 615 F.2d 318, 328 (5th Cir. 1980), the Defendant argues that because this information is essential to the probable cause determination, the Court may *infer* that Agent Poynter acted recklessly in omitting Mrs. Ziegler's description of one of the perpetrators as black from the very fact that the information was omitted.

In Martin, the Fifth Circuit held that the Franks exception for considering "subfacial challenges" to the search warrant affidavit in the case of intentional or reckless material misrepresentations could also apply in the case of intentional or reckless material omissions. 615 F.2d 318, 328 (5th Cir. 1980). The court observed that the trial court permitted the defendant to present evidence regarding the omissions at the suppression hearing (much like the instant Defendant presented Mrs. Ziegler's statement), which left the court with the task of determining

> whether or not Martin proved by a preponderance of the evidence, first, that the omissions were in fact made, and, second, that they were made intentionally or with a reckless disregard for the accuracy of the affidavit. If Martin carried this burden, we would be required to determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for Martin's arrest. If it would not, we would be required to void the warrant and suppress the evidence seized pursuant to it.

Id. "By analogy [to Franks], it must be proven that the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit; negligent omissions will not undermine the affidavit." Id. at 329. The Court observed that proving the affiant acted intentionally or recklessly is a daunting task for a defendant:

> Doubtless it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in

17

conducting his investigation and making the affidavit. Nevertheless, it follows from Franks that the accused bears the burden of showing by a preponderance of the evidence that the omission was more than a negligent act. *It is possible* that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself. Ours, however, is not that case.

Id. (emphasis supplied). Thus, the Fifth Circuit recognized a narrow exception to the Supreme Court's requirement in Franks that a defendant seeking to pierce the presumed truthfulness of the affidavit must show the affiant acted intentionally or, at least, in reckless disregard for the truth. However, even the Fifth Circuit concluded that this narrow exception did not apply in Martin because the omitted facts were not clearly central to the probable cause finding. Id.

It does not appear that the Sixth Circuit has adopted the narrow exception (this inference of recklessness), which the Fifth Circuit created in Martin.[4] Instead, the Government argues that the Sixth Circuit requires a higher standard for omissions, as opposed to misrepresentations, of fact in an affidavit: "[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." Mays, 132 F.3d at 815.

In Mays, our appellate court warned against applying the prosecutor's duty pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), to disclose exculpatory evidence to a defendant to ensure the fairness of a criminal trial, to the law enforcement officer conducting a criminal investigation. Id. at 815-16. The court observed that the actors are different ("a prosecutor who possesses a mature knowledge of the entire case" vs. "non-lawyers who normally

_____

[4] The Court notes that the Defendant attributes the Martin case to the Sixth Circuit. [Doc. 33, p. 17] The Court will presume that this error is inadvertent.

secure warrants in the heat of a criminal investigation"), the circumstances are different (preparation for a trial vs. "the time pressures inherent in the warrant process"), and the consequences are different (conviction vs. arrest or search).  Id.  "Whereas the 'overriding concern' of Brady is with the 'justice of finding guilt' that is appropriate at trial, . . ., Franks recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made."  Id. at 816 (internal citations omitted).  Thus, the showing that the officer omitted a material fact with the intention to mislead the reviewing judge or with reckless disregard for the truth is integral to the Franks analysis and should not be presumed.

The Court finds that the Defendant has failed to make the *prima facie* showing required for a Franks hearing, because he does not even argue that Agent Poynter intentionally or recklessly stated that both men who engaged in the April 28 kidnapping and attempted robbery were white.  Instead, he asks the Court to infer that the omission of Mrs. Ziegler's description of one of the men as black was recklessly made because this fact is of central importance to the nexus determination.  Even if the Sixth Circuit permitted such an inference in the appropriate case, the Court finds that an inference of recklessness is not warranted here.  Although information establishing a nexus between the crimes on April 28 and July 7, 2015, and the Allison Drive cabin is modest, it is not comprised solely of the race of the suspects, as the Defendant argues.  The presence of two white male perpetrators is a link between the April 28 kidnapping and attempted robbery, the July 7 kidnapping and attempted robbery, the September 3 car chase, and the November 25 stop of the Pathfinder and arrest of the Defendant and Witham.  However, as discussed in section A above, it is not the only link.  Moreover, no one

19

contests the victims' description of the perpetrators of the July 7 kidnapping and robbery as being two white males. The Court finds that the Defendant has not made the strong showing necessary to permit the Court to look beyond the search warrant affidavit.

## D. Illegally Gained Information

Finally, the Defendant argues that the items seized from his person and his bag following his arrest on November 25, 2015, should be stricken from the affidavit because he was arrested without a warrant or probable cause. He contends that without the paper seized from his person and the items from his bag, the affidavit contains insufficient information to establish a nexus between the alleged crimes and the Allison Drive cabin. The undersigned has considered the Defendant's arguments regarding the legality of his arrest in depth in a separate Report and Recommendation [Doc. 58], filed on October 3, 2016. In that Report, the Court found that based upon the totality of the circumstances, including the circumstances known to the arresting officer and the collective knowledge of the NCSHP and Special FBI Agent Jeffrey Blanton, the officer had probable cause to arrest the Defendant immediately upon encountering him on the side of the road. Accordingly, the Court discerns no basis to strike the items seized incident to the Defendant's arrest from the search warrant affidavit.

## E. Good Faith

The Government contends that if the Court finds that the magistrate judge lacked probable cause to issue the search warrant for the Allison Drive cabin, suppression of the evidence seized during the execution of the search warrant is not warranted because the executing officers reasonably relied on the search warrant in good faith. It argues that the

affidavit was lengthy and detailed. Thus, the Government maintains that to hold that the affidavit was so lacking in probable cause that the executing officers were entirely unreasonable in relying on it is to require those officers to have legal training and knowledge that is superior to that of the United States Magistrate Judge who issued the search warrant.

"The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible."[5] United States v. Dice, 200 F.3d 978, 983 (6th Cir. 2000); see also Mapp v. Ohio, 367 U.S. 643, 654 (1961) (holding that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court"); Weeks v. United States, 232 U.S. 383, 398-99 (1914) (establishing the exclusionary rule as the remedy for violations of the Fourth Amendment). However, in United States v. Leon, the Supreme Court recognized that the deterrent effect of the judicially created exclusionary rule did not extend to situations in which an officer in objective good faith obtains a search warrant from a judge and acts within the scope of that warrant. 468 U.S. 897, 920 (1984).

In the present case, the Court has found that probable cause existed to issue the search warrant for the Allison Drive cabin and that the Defendants has failed to make a substantial preliminary showing that the affidavit contained material false statements or omissions. Because the Court has found no reason to suppress evidence seized in the November 26, 2015 search of the Allison Drive cabin, the Court need not reach the question of whether the officers executed the search warrant in good faith.

---

[5] The undersigned acknowledges that in its more recent decisions, the Supreme Court has backed away from this traditional remedy for Fourth Amendment violations. In Herring v. United States, the Supreme Court turned from an analysis of whether law enforcement's actions fell within the narrow "good faith" exception to the exclusionary rule to a broader cost-benefit analysis of whether the exclusion of evidence will deter future Fourth Amendment violations. 555 U.S. 135, 141 (2009); see also United States v. Master, 614 F.3d 236, 242 (6th Cir. 2010) (discussing this change in the application of the exclusionary rule).

### III.    CONCLUSION

After carefully considering the parties' filings and arguments, the exhibits, and the relevant legal authorities, the Court finds that law enforcement properly searched the cabin at 380 Allison Drive, Maggie Valley, North Carolina, on November 26, 2015, pursuant to a valid search warrant.    Accordingly, the undersigned respectfully **RECOMMENDS** that the Defendant's Motion and Memorandum to Suppress Evidence Obtained at 380 Allison Drive ("Southern Comfort") [Doc. 33] be denied.   The undersigned also **RECOMMENDS** that the Defendant's Omnibus Motion to Suppress All Subsequent Search Warrants [Doc. 34] be denied as moot because the evidence seized in the search of the Allison Drive cabin was not unconstitutionally obtained.[6]

Respectfully submitted,

_____ s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Crim. P. 59(b)(2) (as amended).  Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

22